## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| AUDREY MACHNIK, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 18-cv-155 |
| | ) |
| | ) **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) |
| v. | ) |
| | ) **Jury Trial Demanded** |
| SEQUIUM ASSET SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Audrey Machnik is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, namely a personal credit card debt.

5.     Defendant Sequium Asset Solutions, LLC ("Sequium") is a foreign limited liability company with its primary offices located at 1130 Northchase Parkway, Suite 150 Marietta, Georgia 30067.

6.      Sequium does substantial business in Wisconsin and has designated its registered agent in Wisconsin for the service of process as Corporation Service Company, 8040 Excelsior Drive, Madison, Wisconsin 53717.

7.      Sequium is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      Sequium is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9.      Sequium is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

10.      On or around August 28, 2017, Sequium mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "First Savings Bank."   A copy of this letter is attached to this complaint as Exhibit A.

11.      The alleged debt identified in Exhibit A was for an alleged credit card account, ending in "7289," which was used only for personal, family, or household purposes.

12.      Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

13.      Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

14.      Upon information and belief, Exhibit A is the first written communication Sequium mailed to Plaintiff regarding this alleged debt.

15.      Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

2

**Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different for the current creditor.**

Exhibit A.

16.     Exhibit A also contains the following text:

If you would like to make a payment on your account we have three convenient ways to pay:
▪ **Pay by phone:** Please call the number listed above and speak with a representative.
▪ **Pay by Mail:** Please enclose the bottom portion of this letter with your payment.
▪ **Pay Client Directly**: Pay from an old statement or contact the creditor directly.

Exhibit A.

17.     Exhibit A also contains the following:



Exhibit A.

18.     On its face, Exhibit A is false, deceptive, misleading, and confusing.

3

19.     Exhibit A states that there are "three convenient ways to pay."

20.     Exhibit A states that the consumer can

      i.   pay Defendant by phone;

      ii.   Pay Defendant by mail; or

      iii.   Pay "Client" directly "from an old statement or contact the creditor directly."

21.     To the left of the statement that there are "three convenient ways to pay," Exhibit A states that the consumer can "Pay Online."

22.     The unsophisticated consumer would be confused as to whether there are actually four ways to pay, or whether payment by one of the "ways to pay" would not actually be processed.

23.     Exhibit A also states the consumer can "Pay from an old statement...."

24.     Exhibit A is false, deceptive, misleading, and confusing.

25.     The alleged debt in Exhibit A is a credit card debt.

26.     Due to the addition of interest and late fees, the amount of the debt on any "old statement" could be significantly different from the amount sought in Sequium's letter.

27.     The unsophisticated consumer, being advised to "pay from an old statement," would be confused as to the account balance.

28.     Even assuming the unsophisticated consumer referred to an "old statement" that stated the same balance as in Exhibit A, she would be confused as to the amount of the debt that was actually due as of the date of Exhibit A.

29.     The account balance of open-end credit accounts is generally payable in installments, and only a portion of the "balance" is actually due when the statement is mailed.

*See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sep. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.' For example, a debtor might 'owe' a certain amount on a loan but only a portion of that amount will be 'due' at a particular time.").

30. For example, a copy of the final account statement Plaintiff received with respect to the alleged debt referenced in <u>Exhibit A</u> is attached to this complaint as <u>Exhibit B</u>.

31. <u>Exhibit B</u> contains the following:

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $585.09 |
| **Minimum Payment Due** | **$387.09** |
| **Payment Due Date** | **March 16, 2017** |
| **Late Payment Warning:** If we do not receive your minimum payment by 5:00 PM CT on the date listed above, you may have to pay up to a $29.00 late fee. | |

<u>Exhibit B</u>.

32. <u>Exhibit B</u> states that the "New Balance" of the account is $585.09, the same balance stated in <u>Exhibit A</u>.

33. <u>Exhibit B</u> also states that the amount due is actually $387.09, and that the payment is due March 16, 2017.

34. <u>Exhibit B</u> also states that, if Plaintiff did not make the minimum payment by 5:00 PM CT on March 16, 2017, Plaintiff "may have to pay up to a $29.00 late fee."

35. <u>Exhibit B</u> does not state that, if Plaintiff did not make the minimum payment, the account would be accelerated and the entire balance of the count would become due.

36. It is not uncommon for third-party debt collectors to misstate the amount due by stating the total balance of a debt rather than the amount actually due. For example, attached to this complaint as <u>Exhibit C</u> is a statement from a third-party debt collector, which was mailed to

5

Plaintiff prior to the due date stated in <u>Exhibit B</u>, which states the balance but does not direct Plaintiff to make a minimum payment.

37. <u>Exhibit A</u> refers the consumer to "an old statement" without explaining that the balance of the account had been accelerated.

38. The unsophisticated consumer, upon being directed to "an old statement," would have no idea how much was actually due as of the date <u>Exhibit A</u> was mailed.

39. Referring the consumer to "an old statement" is misleading and confusing to the unsophisticated consumer as to the amount due, even assuming the unsophisticated consumer actually refers to the final statement she received.

40. Additionally, the statement that the consumer may "pay from an old statement" is even more confusing in light of the statutory validation notice, which states that the consumer has the right to request the name and address of the original creditor.

41. The consumer, having been told to "pay from an old statement," would be confused as to whether she can request the name and address of the original creditor.

42. Normally, the confusion may be cured by the statement that the debt collector will only provide this information if the name and address of the original credit is "different from the current creditor." 15 U.S.C. § 1692g(a)(5).

43. However, <u>Exhibit A</u> deviates from the statutory language. *Compare* 15 U.S.C. § 1692g(a)(5) (requiring "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different **from** the current creditor.") (emphasis added) *with* <u>Exhibit A</u> ("this office will provide you with the name and address of the original creditor, if different **for** the current creditor.").

6

44. The unsophisticated consumer, having been informed that she may request the name and address of the original creditor, if different **for** the current creditor, would be confused as to whether she may actually pay from an old statement or if the current creditor is not the original creditor.

45. The unsophisticated consumer knows that debts are freely assignable and that defaulted consumer debts may be bought and sold to assignees who also act as third-party debt collectors.

46. The unsophisticated consumer knows that assignees may be affiliated with third-party debt collectors.

47. Exhibit A directs the consumer to pay online at Sequium's website: www.sequium.com.

48. The front page of Sequium's website has a link to Sequium's "Contact Us" webpage, www.sequium.com/ContactUs/ContactUs.

49. Sequium's "Contact Us" webpage provides a form that consumers may use to provide notification that a debt is disputed:

50. The form Sequium provides requires the consumer to provide her phone number and email:



51.     If the consumer does not provide her phone number and email, Sequium does not process the consumer's dispute, as the web form automatically rejects the form submission, returning the error message "Please enter" the "missing" phone number or email.

52.     Sequium cannot condition the processing of the consumer's dispute on her providing contact information. *See Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 752 (N.D. Ill. Nov. 2, 2016) (debt collector violates the FDCPA if it misinterprets a letter that disputes a debt as one that did not constitute a dispute).

53.     Sequium's requirement that consumers who wish to use the online form to dispute their debts has an intimidating effect.

8

54.     The misleading and confusing representations in Exhibit A have an intimidating effect, making the consumer feel that she is in over her head and had better pay rather than question the demand for payment. *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009).

55.     The misleading and confusing representations on Sequium's website has an intimidating effect, making the consumer feel that she is in over her head rather than question the demand for payment. *Id.*

56.     Plaintiff was deceived, misled, and confused by Exhibit A.

57.     The unsophisticated consumer would be deceived, misled, and confused by Exhibit A.

58.     Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

59.     Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to obtain counsel on the consequences of Exhibit A.

### *The FDCPA*

60.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations

9

of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

62.    15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

63.    15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of — the character, amount, or legal status of any debt.

64.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

65.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

66.    15 U.S.C. § 1692g(a) states, in part:

(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing— …

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

67.    Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

11

**COUNT I – FDCPA**

68.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69.     To the left of the statement that there are "three convenient ways to pay," <u>Exhibit A</u> states that the consumer can "Pay Online."

70.     The unsophisticated consumer would be confused as to whether there are actually four ways to pay, or whether payment by one of the "ways to pay" would not actually be processed.

71.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

**COUNT II – FDCPA**

72.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73.     <u>Exhibit A</u> refers the consumer to "an old statement" without explaining whether the balance of the account had changed or been accelerated.

74.     The unsophisticated consumer, upon being directed to "an old statement," would have no idea how much was actually due as of the date <u>Exhibit A</u> was mailed.

75.     Referring the consumer to "an old statement" is misleading and confusing to the unsophisticated consumer as to the amount due, even assuming the unsophisticated consumer actually refers to the final statement she received.

76.     Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

**COUNT III – FDCPA**

77.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

12

78.     Exhibit A deviates substantively from the statutory language set forth in 15 U.S.C. § 1692g(a)(5).

79.     Exhibit A states "this office will provide you with the name and address of the original creditor, if different **for** the current creditor."

80.     There is no materiality requirement for violations of 15 U.S.C. § 1692g(a). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324-25 (7th Cir. 2016).

81.     The unsophisticated consumer, having been informed that she may request the name and address of the original creditor, if different **for** the current creditor, would be confused as to whether she may actually pay from an old statement or if the current creditor is not the original creditor.

82.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a) and 1692g(b).

## COUNT IV – FDCPA

83.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84.     Exhibit A directs consumers to Sequium's website.

85.     Sequium's website allows consumers to submit written disputes through a web form, but the web form requires the consumer to provide the consumer's phone number and email address in order to submit a dispute through the web form.

86.     Sequium's online dispute process intimidates consumers into foregoing disputes and overshadows the validation notice.

87.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a) and 1692g(b).

## CLASS ALLEGATIONS

88.     Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 29, 2017 and January 29, 2018, inclusive, (e) that was not returned by the postal service.

89.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of the Class.

90.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

91.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

92.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

93.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

94.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)      actual damages;

14

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated: January 29, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com